[No. A109576. First Dist., Div. Five. Oct. 18, 2005.]

COUNTY OF ALAMEDA, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
SAN LEANDRO ROCK COMPANY, INC., Real Party in Interest.

COUNSEL

Richard E. Winnie, County Counsel, and Brian E. Washington, Assistant County Counsel, for Petitioner.

No appearance for Respondent.

Law Offices of James M. Whitaker and James M. Whitaker for Real Party in Interest.

OPINION

**GEMELLO, J.**—The County of Alameda (or County) petitions for issuance of a writ of mandate to compel respondent, the Superior Court of Alameda County, to grant the County's motion for summary judgment in an inverse condemnation action brought by real party in interest, San Leandro Rock Company, Inc. (San Leandro Rock). The County contends that the action is not ripe because San Leandro Rock has not submitted a single development proposal to the County for San Leandro Rock's property since the passage of

Measure D, the land use regulation at issue here. Respondent denied the County's motion, holding that San Leandro Rock had proffered sufficient facts to support the conclusion that any development proposal would be futile in light of the restrictions imposed on development of the property. We conclude that respondent erred and accordingly order the issuance of a peremptory writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

The central facts of this case are largely undisputed.

I. *Development History of the San Leandro Rock Property*

San Leandro Rock owns two parcels of land in Alameda County, which are designated Assessor Parcel Nos. 79-100-1 and 79-100-2 (hereafter the Property). The Property is commonly referred to as Chabot Terrace and encompasses approximately 58 acres of land located adjacent to Lake Chabot Road. San Leandro Rock conducted profitable quarry operations on the Property for almost a century. In 1979, Alameda County approved a surface mining permit allowing San Leandro Rock to mine the Property until 1986. The terms of the permit indicated that it would not be renewed, and it appears that the County intended that quarry operations would cease upon expiration of the permit. Robert E. Lee, San Leandro Rock's secretary-treasurer and co-owner, averred in a declaration filed in the superior court that in the late 1970's he was told by county officials that the Property would be suitable for development as a multiple unit residential subdivision. But the 1979 permit itself states that "[a]pproval of this permit *does not commit the site to residential development in the future.*"

San Leandro Rock ceased quarry operations in 1986 when the 1979 permit expired. It is undisputed that from 1986 through November 2000, the Property was zoned for agricultural uses.[1] In the 1990's San Leandro Rock worked with a number of developers to explore possible residential development of the Property. No such development was ever completed.[2] In 1993, San Leandro Rock proposed developing a golf driving range on the Property, and in 1994, the Alameda County Planning Commission and the Board of Supervisors issued a conditional use permit allowing the construction and operation of a golf driving range. San Leandro Rock's golf driving range

---

[1] This designation permitted a number of uses, such as a farm, truck garden, nursery, winery, or fish hatchery. It also permitted the raising of livestock or the grazing, breeding, or training of horses and cattle.

[2] It is unclear how the Property could legally have been developed as a residential subdivision given that it was zoned only for agricultural uses, and the parties' briefs do not clarify this point.

development was permitted as an "outdoor recreation facility" under the then-applicable agricultural zoning.

## II. *Measure D*

In November 2000, Alameda County voters approved Measure D, an initiative that made numerous changes to the Alameda County General Plan to preserve more land for agriculture and open space and "curb[] the juggernaut of urban sprawl." (Alameda County Ballot Pamp., Gen. Elec. (Nov. 7, 2000) Measure D, § 1.) Measure D changed the designation of the San Leandro Rock Property from an agricultural to a "resource management" area. (Measure D, § 13.) The "resource management" designation permits a number of the same uses allowed under the prior agricultural use zoning and allows agricultural uses, recreational uses, habitat protection, watershed management, public and quasi-public uses, certain quarries, low intensity agriculture, grazing, and very low density residential development. (Measure D, § 8.) Measure D provides that local authorities may not exercise discretion to vary the permitted uses; any changes must be approved by the voters. (Measure D, §§ 4, 23.) However, the measure does contain the following "Protection of Legal Rights" provision: "Notwithstanding their literal terms, the provisions of this ordinance do not apply to the extent, but only to the extent, that courts determine that if they were applied they would deprive any person of constitutional or statutory rights or privileges, or otherwise would be inconsistent with the United States or State constitutions or law. The purpose of this provision is to make certain that this ordinance does not violate any person's constitutional or legal rights. [¶] To the extent that a provision or provisions of this ordinance do not apply because of this section, then only the minimum development required by law which is most consistent with the provisions and purposes of this ordinance shall be permitted." (Measure D, § 3.)

## III. *San Leandro Rock's Inverse Condemnation Action*

Since Measure D was passed, San Leandro Rock has not submitted any development proposals to the County for the Property. In November 2002, San Leandro Rock filed a complaint in inverse condemnation alleging that Measure D, as applied to the Property, constituted a taking under the federal and California Constitutions. On December 3, 2004, Alameda County filed a motion for summary judgment arguing that San Leandro Rock's inverse condemnation claim was not ripe because San Leandro Rock had never submitted a development proposal to the County. San Leandro Rock countered that it need not submit a development proposal because Measure D deprived it of *all* economically viable uses of its property and that Measure D had deprived San Leandro Rock of its reasonable investment-backed expectation of residential development on its property. Relying exclusively on the

U.S. Supreme Court's opinion in *Palazzolo v. Rhode Island* (2001) 533 U.S. 606 [150 L.Ed.2d 592, 121 S.Ct. 2448] (*Palazzolo*), San Leandro Rock claimed that it was excused from the usual requirement of submitting a development application because Measure D made "the result of the application process clear at the outset" and therefore any application would be futile.[3]

Respondent denied the motion for summary judgment and stated that "the basis for the tentative ruling is, in effect, the futility exception to the general rule" of ripeness. In its written order, respondent stated that Alameda County had not disproved San Leandro Rock's allegations that none of the permitted uses of the Property were economically viable; that no land use agency had discretion to permit any economically viable uses; and that all permissible uses of the Property were known to a reasonable degree of certainty.

Respondent distinguished this division's recent opinion in *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246 [2 Cal.Rptr.3d 739] (*Shea Homes*), in which we held that a property owner's as-applied challenge to Measure D was not ripe because the property owner had not submitted an application for development of its property. (*Shea Homes*, at p. 1269.) Respondent concluded that the rationale of *Shea Homes* was inapplicable, "because Defendant does not show that the County has any discretion to consider proposals for economically viable uses or that the extent of the permitted development on the land is unknown." Accordingly, in an order dated March 3, 2005, respondent denied the County's motion for summary judgment.

### IV. Proceedings in This Court

Alameda County filed its petition for writ of mandate in this court on March 22, 2005. On April 7, 2005, we ordered San Leandro Rock to submit

---

[3] The bases for San Leandro Rock's claim that there was no economically viable use of the Property were certain statements in Lee's declaration. Lee averred that Measure D permitted the building of only two homes on the Property and that this was not an economically viable use. He also averred that the nature of the Property and the lack of readily available County sewer service combined to preclude "the clearly defined permissible uses under Measure D or [to] cause[] permissible uses under Measure D to be cost prohibitive." The County objected to the portions of Lee's declaration that addressed what uses were permissible under Measure D. Insofar as we can discern from the objections and evidentiary rulings, respondent sustained the County's objections to the extent that Lee's statements concerning the scope of Measure D were legal conclusions. Thus, Lee's statements cannot be used to support San Leandro Rock's arguments regarding the extent of the legal restrictions that Measure D places upon the Property. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089] [on review of summary judgment, appellate court does not consider evidence to which objections have been made and sustained].)

opposition to the petition and permitted the County to file a reply. After a detailed review of the record, we issued an alternative writ of mandate on May 26, 2005, commanding respondent superior court either to set aside and vacate its March 3, 2005 order or to show cause before this court why a peremptory writ of mandate should not issue. Citing *Shea Homes* and our earlier decision in *Milagra Ridge Partners, Ltd. v. City of Pacifica* (1998) 62 Cal.App.4th 108 [72 Cal.Rptr.2d 394] (*Milagra Ridge*), we noted our disagreement with respondent's ruling and stated specifically that "[t]he futility exception to the ripeness doctrine is inapplicable in this case." We further explained that *Palazzolo*, the sole authority cited by San Leandro Rock, did not support San Leandro Rock's ripeness argument.

On June 16, 2005, the superior court responded to our alternative writ of mandate. Respondent reasoned that San Leandro Rock's case could be distinguished from our opinion in *Shea Homes* for two reasons. First, respondent concluded that Lee's declaration provided factual support for San Leandro Rock's assertion that "Measure D has precluded any viable economic use of [San Leandro Rock's] property." In respondent's view, it was undisputed on the record that the only economically viable use of the Property was as a residential subdivision.[4]

Second, respondent concluded that San Leandro Rock had "made a compelling argument . . . based upon its reading of Measure D that the normal application process cannot result in any variance or exemption from the strict limitations of Measure D." The superior court noted that section 19(c) of Measure D precludes the approval of any "variance or any other discretionary administrative or quasi-administrative action which is inconsistent with this ordinance" and that section 23 provides that Measure D may be changed only by a vote of the people of Alameda County. As a consequence, respondent concluded that there was no administrative process which could result in a permit for an economically viable use of the Property. In respondent's view, *Shea Homes* is not controlling because, although we had considered Measure D, we did not discuss the restrictions of sections 19 and 23 of the ordinance. (But see *Shea Homes, supra,* 110 Cal.App.4th at p. 1253 [noting that Measure D's provisions may be changed only by a vote of the electorate].) Respondent distinguished the cases cited in *Shea Homes* that limited the futility exception to the ripeness doctrine to developers who have submitted at least one permit application "with the reasonable expectation that an

---

[4] Respondent cites the County's statement of undisputed material facts as support for its conclusion that "during the 1990's [San Leandro Rock] worked with residential developers to develop residential uses for the property, which were then permissible for the quarry property." We note that the portion of the statement concerning permissible uses for the Property is plainly unsupported by the record. The relevant paragraph of the County's statement of undisputed material facts says nothing at all about whether residential uses would have been permissible under the zoning regulations then applicable to the Property.

administrative process exists which could result in a permit for an economically viable use of the property in question." Respondent concluded that "there is no reasonable expectation that the County can or will permit an economically viable use of this property without court intervention." On these grounds, the superior court refused to comply with our alternative writ of mandate.

## DISCUSSION

The question presented by the County's petition for a writ of mandate is whether San Leandro Rock can proceed with its regulatory taking action before the County has the opportunity to decide and explain the reach of Measure D. San Leandro Rock argued that any application to develop the Property would be futile because Measure D forbids the County from exercising any discretion to vary the uses permitted by the ordinance. Resolution of the question turns on whether the facts of this case permit San Leandro Rock to invoke the futility exception to the ripeness doctrine.

■ The superior court's denial of a motion for summary judgment is subject to independent review. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

### I. *Ripeness and Finality in Taking Cases*

■ San Leandro Rock's action alleges that application of Measure D to the Property effects a regulatory taking. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 9–10 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*) [distinguishing between takings effected by physical invasion of property and those which " 'merely regulate[] the use of property' "]; see also *Palazzolo, supra*, 533 U.S. at pp. 617–618 [discussing distinction under federal law].)[5] Where government action merely regulates the use of the property, " 'compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole.' " (*Hensler, supra*, 8 Cal.4th at p. 10, quoting *Yee v. Escondido* (1992) 503 U.S. 519, 522–523 [118 L.Ed.2d 153, 112 S.Ct. 1522] (*Yee*).) There is no precise rule for determining when land use regulations effect a taking of property, and the answer to the question requires a weighing of private and public interests. (*Milagra Ridge, supra*, 62 Cal.App.4th at p. 116; accord, *MacDonald, Sommer & Frates v. Yolo County* (1986) 477 U.S. 340, 348

---

[5] In taking cases, "California courts are guided by decisions of the United States Supreme Court." (*Milagra Ridge, supra*, 62 Cal.App.4th at p. 116.)

[91 L.Ed. 2d 285, 106 S.Ct. 2561] (*MacDonald*) [noting that United States Supreme Court has no "set formula" to determine where regulation ends and a taking begins].) Determining whether the challenged regulatory restriction constitutes a compensable taking necessitates "[a]n *individualized* assessment of the impact of the regulation on a *particular parcel* of property and its relation to a legitimate state interest[.]" (*Hensler, supra,* 8 Cal.4th at p. 10, italics added.)

■ Thus, under both federal and California law, before a plaintiff may establish a regulatory taking, it must first demonstrate that it has received a final decision from the land use authority regarding application of the challenged land use regulation to its property. (E.g., *MacDonald, supra,* 477 U.S. at p. 348 ["essential prerequisite" to regulatory taking claim is "final and authoritative determination of the type and intensity of development legally permitted on the subject property"]; *Milagra Ridge, supra,* 62 Cal.App.4th at pp. 116–117.) The difficulty inherent in determining whether a regulatory taking has occurred makes courts reluctant to examine such claims until the administrative agency has arrived at a final, definitive decision regarding how it will apply the regulation to the property in question. (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 325 [82 Cal.Rptr.2d 649] (*Toigo*).) The purpose of this finality requirement is straightforward. "A final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of 'all economically beneficial use' of the property, [citation], or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred." (*Palazzolo, supra,* 533 U.S. at p. 618.) Simply put, a court cannot say whether a regulation goes too far in restricting the use of property unless it knows how far the regulation goes. (*Id.* at p. 622; *MacDonald, supra,* 477 U.S. at p. 348; *Milagra Ridge, supra,* 62 Cal.App.4th at p. 117.)

■ The property owner "bears a heavy burden of showing that a regulation as applied to a particular parcel is ripe for a taking claim." (*Milagra Ridge, supra,* 62 Cal.App.4th at p. 117.) The property owner can show that a final decision has been made for ripeness purposes only when it can set forth facts that are " 'clear, complete, and unambiguous' showing that the agency has 'drawn the line, clearly and emphatically, as to the *sole use* to which [the property] may ever be put.' " (*Toigo, supra,* 70 Cal.App.4th at p. 325, quoting *Hoehne v. County of San Benito* (9th Cir. 1989) 870 F.2d 529, 533, italics added.)

■ The County argues correctly that controlling case law from this district holds that before an inverse condemnation action is ripe, a landowner must have made at least one development proposal that has been thoroughly rejected by land use authorities and have prosecuted at least one meaningful

application for a zoning variance, which has been finally denied. This statement of the applicable rule is grounded in United States and California Supreme Court authority, as well as in case law from this district and others. (See, e.g., *MacDonald, supra,* 477 U.S. at p. 349, citing *Williamson Planning Comm'n v. Hamilton Bank* (1985) 473 U.S. 172, 186 [87 L.Ed.2d 126, 105 S.Ct. 3108] (*Williamson*); *Hensler, supra,* 8 Cal.4th at pp. 10–12; *Shea Homes, supra,* 110 Cal.App.4th at pp. 1268–1269; *Toigo, supra,* 70 Cal.App.4th at p. 325; *Milagra Ridge, supra,* 62 Cal.App.4th at pp. 116–117; accord, *Calprop Corp. v. City of San Diego* (2000) 77 Cal.App.4th 582, 590–591 [91 Cal.Rptr.2d 792] (*Calprop*); *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1032 [282 Cal.Rptr. 877] (*Long Beach Equities*).) In the instant case, there is no dispute that San Leandro Rock has not satisfied these ordinary ripeness requirements. San Leandro Rock admits that it has submitted no development proposals to the County since the passage of Measure D. (See *Shea Homes, supra,* 110 Cal.App.4th at p. 1269 [takings claim not ripe for adjudication where landowner "has not submitted any application for development of its . . . property since the adoption of Measure D"].)

## II. *The Futility Exception*

Both federal and California law provide a futility exception to the ripeness doctrine. San Leandro Rock contends that its taking claim is ripe because Measure D itself makes clear precisely what uses of the Property are permissible, and the ordinance leaves the County with no discretion to permit any other uses. As a result, San Leandro Rock argues, submission of a development plan to the County would be futile, because none of the permitted uses is economically viable. Respondent accepted San Leandro Rock's argument. The correctness of the superior court's denial of the County's motion for summary judgment thus turns on the applicability of the "futility exception" to the facts of this case.

■ The futility exception is "extremely narrow." (*Toigo, supra,* 70 Cal.App.4th at p. 327.) It is not triggered by the mere possibility, or even the probability, that the responsible agency will deny the requested development permit. (*Ibid.*) The exception generally cannot be invoked unless a landowner has first made a development proposal that the authorities have rejected. " '[B]efore claiming the exception, the landowner must submit *at least one development proposal and one application for a variance* if meaningful application and submission can be made.' " (*Calprop, supra,* 77 Cal.App.4th at p. 593, quoting *Del Monte Dunes v. City of Monterey* (9th Cir. 1990) 920 F.2d 1496, 1501, italics added.) In *Milagra Ridge,* this division stated that "[t]he futility exception . . . relieves a developer from submitting '*multiple applications* when the manner in which the *first application* was rejected

makes it clear that no project will be approved.' " (*Milagra Ridge, supra,* 62 Cal.App.4th at p. 120, quoting *Southern Pacific v. City of Los Angeles* (9th Cir. 1990) 922 F.2d 498, 504, italics added.) San Leandro Rock cannot claim the exception because it has not satisfied the requirement imposed by California case law that it first submit a development proposal.

 San Leandro Rock argued successfully in its opposition to the County's motion for summary judgment that its taking claims are ripe for adjudication even in the absence of a previously rejected development proposal because "no land use agency has discretion to permit any economically viable uses, and . . . all permissible uses are known to a reasonable degree of certainty." San Leandro Rock's argument ignores the purpose of the finality requirement. As explained earlier, in *Williamson* the court established as a ripeness requirement for taking claims that "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations to the property at issue." (*Williamson, supra,* 473 U.S. at p. 186.) "Finality . . . requires the local government to determine the type and intensity of development that land use regulations will allow on the subject property; this determination helps the court evaluate whether regulation of the subject property is excessive by identifying the extent of the regulation." (*Dodd v. Hood River County* (9th Cir. 1995) 59 F.3d 852, 858.) Courts require taking claimants to resort first to administrative procedures to give the implementing agency "the opportunity . . . to decide and explain the reach of [the] challenged regulation." (*Palazzolo, supra,* 533 U.S. at p. 620.) The agency's explanation of the regulation is especially important because regulatory takings "necessarily entail[] complex factual assessments of the purposes and economic effects of government actions." (*Yee, supra,* 503 U.S. at p. 523.)

Here, the County has not had the opportunity to explain the reach of the challenged regulation, and we are not persuaded that all permissible uses of the Property are in fact known. Although Measure D restricts the permissible uses of the Property, it allows certain general categories of uses, such as recreational and agricultural uses, as well as others. The County has not had the opportunity to define concretely what sort of uses are permissible for this Property under these categories, and the "exercise of this interpretive latitude is assigned in the first instance" to the implementing agency, not the courts. (*Tahoe-Sierra Preservation Council v. State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421, 1443 [259 Cal.Rptr. 132].) Without the agency's elucidation of the precise extent of the regulation, a court simply cannot decide whether Measure D has effected a regulatory taking. (See *Long Beach Equities, supra,* 231 Cal.App.3d at p. 1039 [until landowner has obtained final agency decision, "it is impossible to know whether the land retains any reasonable beneficial use *or whether [the landowner's] reasonable investment-backed expectations have been destroyed*"].)

■ Even though a land use regulation is restrictive, this alone does not render resort to administrative procedures futile. (See, e.g., *Calprop, supra,* 77 Cal.App.4th at pp. 598–599 [fact that city had committed to preserve designated area largely as open space did not make application to implementing agency futile].) "[I]f permissible uses exist, a development restriction does not deny a property holder the economically viable use of his property." (*Shea Homes, supra,* 110 Cal.App.4th at p. 1267.) Under Measure D, permissible uses of the Property exist, and it may be that the County's interpretation of Measure D will make one of those uses economically beneficial.[6]

### III. *This Case is Controlled by Our Opinions in Milagra Ridge and Shea Homes*

■ The attempts of respondent and San Leandro Rock to distinguish this case from this division's controlling precedents are unavailing. Both respondent and San Leandro Rock place great reliance on Lee's declaration that none of the permissible uses of the Property is economically viable. But in *Milagra Ridge* we determined that the declaration of a land use valuation expert does not establish futility simply by opining that there is no economically feasible use of the property under the applicable zoning regulations. (*Milagra Ridge, supra,* 62 Cal.App.4th at p. 120.) We held that "[f]utility may not be determined 'by inquiring whether any beneficial use remains or whether the regulatory regime inhibits the property's marketability. Adoption of such standards would require courts to speculate as to what potential uses may be lurking in the hopes of the property owner and in the minds of developers and city planners. This would result in the same sort of speculation that the ripeness doctrine prohibits.' " (*Ibid.,* quoting *Kinzli v. City of Santa Cruz* (9th Cir. 1987) 818 F.2d 1449, 1454.) Similarly, in *Toigo,* Division Two of this court held that the declaration of an engineering expert did not show the existence of a triable issue of fact with respect to futility, despite declarant's claim that the manner in which a prior development proposal had been rejected demonstrated that no residential development would be permitted on the property. (*Toigo, supra,* 70 Cal.App.4th at pp. 328–330.)

■ Nor can respondent's ruling on the futility issue be squared with our opinion in *Shea Homes.* In that case, a landowner challenged Measure D's restrictions on its property, contending that the ordinance's " 'ill-defined "open space preserve" designation' " for the property restricted permissible

---

[6] This case is not analogous to cases such as *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1014, 1017 [120 L.Ed.2d 798, 112 S.Ct. 2886], where it can be said with certainty that the governmental regulation "goes too far" and effects a taking because it presents "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted."

uses to certain forms of agriculture, which, because of the property's physical characteristics, were not economically viable uses. (*Shea Homes, supra,* 110 Cal.App.4th at p. 1266.) We noted that Measure D on its face permitted a number of uses and that the ordinance gave the County "flexibility" to avoid any potentially unconstitutional application of Measure D's restrictions. (*Shea Homes, supra,* at p. 1267.) We rejected the landowner's as-applied challenge to Measure D as unripe, holding that courts cannot make the constitutional determination as to whether a land use regulation deprives a landowner of all economically beneficial use of the property until the courts know the extent of the permitted development on the land in question. (*Shea Homes, supra,* at p. 1268, citing *Palazzolo, supra,* 533 U.S. at p. 618.) Because the County had not had "the opportunity to exercise its full discretion in considering [the landowner's] plans for the property in light of the measure," the takings claim was not ripe. (*Shea Homes, supra,* at p. 1269.)

The superior court correctly noted in its response to our alternative writ of mandate that *Shea Homes* arose in a different procedural posture from the present case. While this is true, it does not make *Shea Homes* any less binding here. In that case, we held that the superior court had not abused its discretion in denying a property owner's request for leave to amend its complaint to include an as-applied challenge to Measure D. (*Shea Homes, supra,* 110 Cal.App.4th at p. 1268.) We so held because there was no "reasonable possibility that [the property owner] could cure any defects in its complaint concerning an as-applied challenge to Measure D." (*Ibid.*) There was no reasonable possibility that the property owner could state a "viable or 'ripe' claim that Measure D effected a regulatory taking without just compensation," because it had failed to submit a development application after the passage of the ordinance. (*Id.* at pp. 1268–1269.) This was true notwithstanding the fact that the County had held two hearings regarding the development since the adoption of Measure D, " 'the upshot' of which was that the County had no authority . . . to approve the project unless it '[went] to the voters.' " (110 Cal.App.4th at p. 1268.) Nor were the property owner's assertions that it had exhausted its only available remedy and was at a " 'dead end' " sufficient to demonstrate ripeness. (*Ibid.*)

■ Our earlier opinions in *Milagra Ridge* and *Shea Homes* compel the conclusion that San Leandro Rock's taking claim is not yet ripe. Those cases also demonstrate that San Leandro Rock cannot show that resort to administrative procedures would be futile. As a consequence, the order denying the County's motion for summary judgment must be reversed.

## DISPOSITION

The alternative writ, having served its purpose, is discharged. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue compelling respondent superior court to vacate its March 3, 2005 order denying petitioner's motion for summary judgment and to enter a new and different order granting the motion. Petitioner shall recover its costs.

Jones, P. J., and Stevens, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 4, 2006, S139206.