Filed 3/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THOMAS FELKAY, as Trustee, etc., | 2d Civil No. B304964 (Super. Ct. No. 17CV03351) (Santa Barbara County) |
| Plaintiff and Respondent, | |
| v. | |
| CITY OF SANTA BARBARA, | |
| Defendant and Appellant. | |

Before seeking damages for a governmental taking of property through inverse condemnation, the property owner must generally submit more than one proposal to the permitting authority seeking zoning variances or reducing environmental impacts to the extent necessary to allow at least some economically beneficial or productive use of the property. Here we hold that multiple applications are not required where the permit denial makes clear that no development of the property would be allowed under any circumstance.

The City of Santa Barbara appeals from a judgment following jury trial awarding Thomas Felkay, as trustee of the Emprise Trust (Felkay), damages for inverse condemnation, and

an order after judgment awarding attorney and expert fees. The city contends Felkay's claim was not ripe for adjudication and that he failed to exhaust his administrative and judicial remedies. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND
### *Application for Coastal Development Permit*

In 2006, Felkay purchased an ocean-front residential lot in Santa Barbara ("the property") for $850,000. The property was a "flag lot" consisting of a narrow driveway from the street to the remainder of the property, which then sloped downward toward the ocean, ending in a sheer cliff above the beach.

Felkay submitted a proposal to build a 3,101 square foot single-family residence to the city's Pre-Application Review Team. He submitted studies that concluded that the top of the bluff was located at 51 feet of elevation. After receiving comments from the city's Single Family Design Board, he applied for a coastal development permit for a slightly smaller residence of 2,789 square feet.

A city planning commission staff report concluded that the bluff top was located at 127 feet of elevation. Because the proposed construction site was located seaward of this elevation, the proposal was inconsistent with City of Santa Barbara Local Coastal Plan Policy 8.2, which prohibits, with exceptions not relevant here, development on a bluff face. Staff concluded that except for Policy 8.2, the proposed project would conform to all applicable zoning and building ordinances.

The report also concluded that the area above 127 feet was "not developable." The report stated that an area above the 127-foot elevation and adjacent to the driveway "does not meet factors of safety for geologic stability" and "there is no

2

feasible alternative location on the property for the proposed level of development."

Staff recommended that the planning commission approve the application notwithstanding the inconsistency with Policy 8.2 to avoid an unconstitutional taking. The planning commission rejected the permit because it violated Policy 8.2.

### City council appeal

Felkay appealed to the city council. He agreed to mitigation measures recommended by city staff. He contested the city's determination as to the location of the top of the bluff. He also contended that the refusal to approve the project deprived him of all economic use of the property.[1]

The Council Agenda Report included an option to approve the permit to avoid a taking, despite the inconsistency with Policy 8.2. The city council rejected this option and denied the permit. The council declined to state that its denial was without prejudice.

The council made factual findings that Felkay failed to show that the proposed development: (1) was not on a bluff face, (2) was compatible with the prevailing character of the neighborhood (it was substantially closer to the ocean), (3) would be geologically stable, and (4) was based on a reasonable investment-backed expectation. It also found that a takings

---

[1] Planning division staff advised the city council that a small residence could be built in the area above the 127-foot elevation and adjacent to the driveway with about 200 square feet of living area on the ground floor and 600 square feet on the second floor. A third floor of 600 square feet potentially could be added but would require modification of parking requirements and might be incompatible with the neighborhood and reduce public ocean views.

determination was not ripe because Felkay had not investigated other potential uses of the land including development of the area above the 127-foot elevation, agricultural or educational uses, or merging the property with the adjoining lot he owned.

### *Petition for administrative mandamus and complaint*

Felkay filed a consolidated petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) and complaint for inverse condemnation. He alleged four causes of action: (1) administrative mandamus, (2) inverse condemnation by regulatory action, (3) temporary inverse condemnation by regulatory action, and (4) inverse condemnation by physical taking. The first cause of action sought an order compelling the city to approve the project. It did not assert that the city acted unlawfully or abused its discretion when it declined to excuse compliance with Policy 8.2 to avoid a taking. The inverse condemnation causes of action sought monetary damages.

The city demurred to the second, third, and fourth causes of action. The trial court overruled the demurrer to the second and third causes of action, rejecting the city's contentions that the claims were not ripe and that Felkay had not exhausted his administrative remedies. The court sustained the demurrer to the fourth cause of action for inverse condemnation by a physical taking.

The parties stipulated, and the court ordered, that "the matters to be adjudicated by the Court on the hearing on the Writ of Mandate shall be those specific issues set forth" in the Determinations and Conclusions of Law section of the city council's resolution denying the appeal, namely, whether the project: (a) is consistent with the policies of the California Coastal Act and the Local Coastal Plan, (b) will be located on the

4

bluff face where it will have adverse effects on coastal resources, (c) minimizes risks in an area of high geologic hazard and assures stability and structural integrity, (d) is compatible with the prevailing character of the neighborhood, and (e) is inconsistent with Policy 8.2. The stipulated order provided that all issues pertaining to the second and third causes of action for inverse condemnation be determined at trial following hearing on the writ of mandate.

### *Writ proceedings*

The trial court denied the petition for writ of mandate. After a hearing, it concluded that substantial evidence supported the finding that the top of the bluff was located at the 127-foot elevation. The court noted that Public Resources Code[2] section 30010 authorizes a local government to approve a project that violates coastal restrictions in order to avoid an unconstitutional taking. The court noted that Felkay had not presented evidence supporting the factors noted in *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 940 (*McAllister*), i.e., "'that the property was purchased with the expectation of residential use, that such expectation was reasonable, that the investment was substantial, and that the proposed development was commensurate with the reasonable investment-backed expectations for the site.'" Accordingly, the Court deemed the taking claim abandoned for purposes of the writ petition.

### *Trial*

Pursuant to the parties' stipulation, the court then commenced the liability phase of the inverse condemnation

---

[2] All subsequent undesignated statutory references are to the Public Resources Code.

claims.

A land surveyor testified that based on the city's determination of the location of the bluff top, construction would be allowed in only a 265-square-foot area above the 127-foot elevation and below a sewer easement. A geotechnical engineer/geophysicist testified that even that area was not buildable because stabilizing the property would require cement caissons that could damage the sewer line, and tiebacks that would intrude into neighboring properties. A land use consultant testified that the area above the 127-foot elevation was unbuildable.

Project Planner Kathleen Kennedy testified as an expert for the city. She authored "most or all" of the planning commission staff report for the project. She said that the proposed project violated Policy 8.2, which prohibits any development on the bluff face regardless of size, and that Felkay had asked the city council to invoke section 30010 and approve the project to avoid a taking. She testified that "since we have been telling the Applicant all along that development was not allowed on the bluff face for years," the city would not anticipate that he would return with another proposal to build below the 127-foot line. When asked whether, "as you sit here today," it was "the City's position . . . that there can be no development . . . below the bluff edge," she replied, "I would say that they received a denial for that, so that's the case." The court later asked Kennedy why the city did not just tell Felkay at the beginning that "8.2 trumps whatever you might submit. We're not going to allow anything on the bluff face. Don't submit anything. . . . [¶] Sounds to me that's where the City was at . . . I'm puzzled." Notwithstanding this expression of the court's interpretation of

6

the evidence, the city did not present any witness to testify otherwise.

The court issued a statement of decision that found: (1) Felkay's claims were ripe, (2) he sought a variance or modification pursuant to section 30010, (3) he was not required to pursue futile applications, (4) denial of the permit rendered the property unbuildable and deprived Felkay of all economic benefit of the property, and (5) the denial constituted a total taking of the property. The court held that a de facto taking occurred because the only remaining use of the property was as vacant land for recreation, parking, or to preserve views. The trial court rejected the city's argument that "there must be more than one reasonable opportunity for a public agency to consider a meaningful project," and concluded that there would have been no point in Felkay going back to the city to pursue a different project.

After the court found there had been a taking, it afforded the city the opportunity to either (1) rescind the decision denying the permit, or (2) proceed to jury trial on the amount of damages as just compensation for permanent taking of the property. The city chose the second option, stating it elected to "'treat this matter as a permanent taking of the value of the property and not rescind its Permit denial to constitute a temporary taking.'"

After a damages trial, a jury found the city was liable to Felkay for the fair market value of $2.4 million. After judgment, the trial court ordered the city to pay attorney and expert fees of $1,007,397. (Code Civ. Proc., § 1036.)

## DISCUSSION
### *Inverse condemnation*

The state and federal constitutions prohibit the government from taking private property without payment of just compensation.  (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.)  A government taking occurs when application of a "regulation denies all economically beneficial or productive use of land."  (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015; *Healing v. California Coastal Com.* (1994) 22 Cal.App.4th 1158, 1169.)

The California Coastal Act (Pub. Resources Code, div. 20 (§ 30000 et seq.)) governs land use planning for the coastal zone.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793.)  Because the city had a certified local coastal program, it had the authority to review applications for new development in its coastal area.  (§ 30519, subd. (a).)

Section 30010 "establish[es] a narrow exception to strict compliance with restrictions on uses in habitat areas based on constitutional considerations."  (*McAllister, supra,* 169 Cal.App.4th at p. 939.)  The statute provides:  "The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the commission, port governing body, or local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor.  This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States."

8

Pursuant to section 30010, where a restriction would require denial of a permit that would deprive the owner of the economic benefit or productive use of the property, the local agency "has two options: deny the permit and pay just compensation; or grant the permit with conditions that mitigate the impacts that limitations were designed to prevent." (*McAllister, supra,* 169 Cal.App.4th at p. 939.) The government entity may "'limit application of the resource protection policies to the extent necessary to allow a property owner a constitutionally reasonable economic use of his or her property.'" (*Ibid.*)

### *Ripeness*

The city contends that the inverse condemnation claim was not ripe because after the city denied his permit application, Felkay did not submit a revised application. We disagree.

"'[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue,'" i.e., when "there has been a 'final, definitive position regarding' how the regulations will be applied to the land." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 10 (*Hensler*).) Ripeness is a question of law we review de novo. (*Communities for a Better Environment v. State Energy Resources Conservation & Development Com.* (2017) 19 Cal.App.5th 725, 732.)

"[B]efore an inverse condemnation action is ripe, a landowner must have made at least one development proposal that has been thoroughly rejected by land use authorities and have prosecuted at least one meaningful application for a zoning

9

variance, which has been finally denied." (*County of Alameda v. Superior Court* (2005) 133 Cal.App.4th 558, 567-568.) The landowner must follow "reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 620-621 (*Palazzolo*).) As we held in *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1032, ripeness requires "at least one meaningful application for a zoning variance, or something similar, which has been finally denied." Once "the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened." (*Palazzolo,* at p. 620; *Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1430 (*Howard*).)

In *Palazzolo*, the claim was ripe based on the city's decisions that "ma[de] plain" that the landowner could not fill or develop any of the wetlands property. (*Palazzolo, supra*, 533 U.S. at p. 621.) Similarly here, the city rejected a variance or waiver based on section 30010, and "made plain" that no development would be permitted below the 127-foot elevation. Accordingly, the claim was ripe.

"[U]nder the 'futility exception' to the requirement of a final decision . . . the submission of another development plan is excused if such an application would be an '"idle and futile act."'" (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 327.) "'[T]he futility exception . . . relieves a developer from submitting "multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved."'" (*County of Alameda v. Superior Court, supra*, 133

Cal.App.4th at pp. 568-569, italics omitted.)

Whether submission of an additional application would have been futile is a question of fact we review for substantial evidence. (*Howard, supra*, 184 Cal.App.4th at p. 1431.) "Under this deferential standard of review . . . we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

The trial court found the city's expert, Kennedy, to be "a defining witness in the case" who "convinced [the court] that there would be NO POINT in going back to seek mitigation." The court did not err in crediting her testimony. (Cf. *Benson v. California Coastal Com.* (2006) 139 Cal.App.4th 348 [commission not estopped by staff member's telephone call that applicant need not attend hearing].) Felkay was not required to submit a second proposal because the city "made plain" it would not allow any development below the 127-foot elevation, and because the area above that elevation was "not buildable."

This case is not like *Toigo v. Town of Ross, supra*, 70 Cal.App.4th 309. There, after denial of a five-lot subdivision application, the applicant failed to show that it would have been futile to propose an alternative plan that would reduce the adverse environmental impacts. (*Id.* at pp. 324-332.) Here, substantial evidence established that the city would not permit any development below the 127-foot elevation, and that the limited area above that elevation was unbuildable.

### *Exhaustion of administrative remedies*

Closely related to ripeness is the requirement that applicants exhaust their administrative remedies unless it would be futile to do so. "A final administrative decision includes

11

exhaustion of any available review mechanism." (*Hensler, supra,* 8 Cal.4th at p. 12.) We review for substantial evidence whether Felkay's actions exhausted his administrative remedies. (*SJCBC LLC v. Horwedel* (2011) 201 Cal.App.4th 339, 345.)

Felkay appealed the planning commission's denial of the permit to the city council. As discussed above, substantial evidence establishes that it would have been futile to submit modified plans because "the agency's decision [was] certain to be adverse." (*Howard, supra,* 184 Cal.App.4th at p. 1430.)

The city was not denied "the opportunity to amend the agency decision and/or grant a variance" to avoid liability for taking private property. (*Hensler, supra,* 8 Cal.4th at p. 11.) The planning commission and the city council were presented with the option to waive the full impact of Policy 8.2 by invoking section 30010. They declined to do so. As provided in *Hensler*, after the court found a taking occurred, it again gave the city both options. (*Id.* at pp. 13-14.) The city again declined to issue a permit, with or without conditions, and chose to proceed to trial on damages.

### *Exhaustion of judicial remedies*

The city contends that Felkay failed to litigate his writ petition to conclusion because he did not argue the section 30010 claim in those proceedings. We disagree.

"Failure to obtain judicial review of a discretionary administrative action by a petition for a writ of administrative mandate renders the administrative action immune from collateral attack, either by inverse condemnation action or by any other action." (*Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 608.) The writ requirement applies whether the petitioner claims the agency's action was

12

invalid and should be cancelled, or seeks compensation for taking of property.  (*Ibid*.)  Felkay filed his petition for writ of administrative mandamus together with his inverse condemnation complaint.  (*Hensler, supra,* 8 Cal.4th at p. 14.)

In the writ proceedings, Felkay challenged the city's determination of the location of the bluff top.  On administrative mandamus, the court may review a decision whether to waive an environmental policy pursuant to section 30010 for abuse of discretion.  (Code Civ. Proc., § 1094.5, subd. (b); *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514-515.)  The city argues that Felkay's failure to challenge on mandamus the city's decision declining to waive the requirements of Policy 8.2 pursuant to section 30010 estopped him from seeking damages for inverse condemnation.  (See *Mola Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405, 410-413 (*Mola*) [plaintiff's dismissal of mandamus petition made city's denial of proposal res judicata and precluded action for damages]; *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645-646 [failure to seek administrative mandamus to challenge permit condition precluded action for injunction or civil rights damages].)

The city is estopped from making this argument by its stipulation that limited the issues to be heard on mandamus, which reserved the inverse condemnation claims for trial.  "Trial courts have inherent and statutory authority to devise and utilize procedures appropriate to the specific litigation before them."  (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 863; Code Civ. Proc., § 187.)  The city forfeited the issue by failing to object to the apportionment of issues between the writ proceedings and trial.  (*Bains v. Department of*

13

*Industrial Relations* (2016) 244 Cal.App.4th 1120, 1126-1128.) The city may not gain an advantage by taking a position incompatible with the stipulation it entered in the trial court. (Civ. Code, § 3512; *People v. Castillo* (2010) 49 Cal.4th 145, 154-155.)

Following the ruling on mandamus, *and by virtue of the parties' stipulation*, Felkay had the right to proceed to trial to determine if the city was liable for a taking, and, if so, a jury trial on the amount of compensation. (Cal. Const., art. I, § 19, subd. (a); *Hensler*, *supra*, 8 Cal.4th at p. 15; *Weiss v. People ex rel. Department of Transportation*, *supra*, 9 Cal.5th at pp. 853-855 & fn. 4.)

This case is unlike *Hensler*, in which the landowner did not seek a variance, did not pursue an administrative appeal, and did not seek administrative mandamus. (*Hensler*, *supra*, 8 Cal.4th at pp. 25-26.) It is also unlike *Mola*, where the plaintiff filed a petition for writ of administrative mandamus but dismissed it before hearing. (*Mola*, *supra*, 57 Cal.App.4th at p. 410.)

Here, the administrative mandamus petition proceeded to a ruling, and the city proceeded to trial without objecting that a trial was barred by a deficiency in the mandamus proceedings. The city was not prejudiced by the failure to litigate denial of the variance in the writ proceedings, because the issue was heard immediately thereafter by the same judge in the court trial. Unlike *Hensler* and *Mola*, the court gave the city the opportunity to rescind its denial of the permit (*Hensler*, *supra*, 8 Cal.4th at p. 26) and "to change its mind 'rather than pay compensation for a taking.'" (*Mola*, *supra*, 57 Cal.App.4th at p.

14

410.)  There was no failure to exhaust judicial remedies.[3]

## DISPOSITION

The judgment and fee award are affirmed.

Respondent shall recover his costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

---

[3] The city appealed from the award of attorney and expert fees in the event it prevailed on the merits of the appeal. Because we affirm the judgment and the city does not otherwise challenge the fee award, it too is affirmed.

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Ariel Pierre Calonne, City Attorney, Tom R. Shapiro and Philip A. Seymour, Assistant City Attorneys; Best, Best & Krieger and Bruce W. Beach for Defendant and Appellant.

Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, Andrew M. Vogel and Steven W. Kerns, Deputy Attorneys General, for California Coastal Commission as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Joseph Liebman and Joseph Liebman for Plaintiff and Respondent.