Filed 1/16/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOTT POWELL et al,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>      Defendant and Respondent. | A137238<br><br>(Humboldt County<br>Super. Ct. No. CV110025) |

Scott and Lynn Powell challenge the constitutionality of a county general plan requirement that they provide an aircraft overflight easement as a condition for obtaining a building permit to make minor alterations to their residence. The Powells contend the easement requirement constitutes a taking of their property without payment of just compensation under *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 (*Nollan*) and *Dolan v. City of Tigard* (1994) 512 U.S. 374 (*Dolan*). The trial court disagreed and, following cross-motions for summary judgment, entered judgment in favor of Humboldt County (County). We affirm.

## I.  BACKGROUND

**A.  *The Permit Application***

In June 2004, the Powells purchased residential property on Grange Road in McKinleyville, California (the property). The Arcata-Eureka Airport (airport), located approximately one mile from the property, is owned by the County. As required by law, the County adopted an "Airport Land Use Compatibility Plan" (ALUCP) in 1993, and amended it in 1998. (Pub. Util. Code, §§ 21675, subd. (a), 21675.1.) The purpose of an ALUCP is to "provide for the orderly growth of each public airport and the area surrounding the airport," as well as to "safeguard the general welfare of the inhabitants

within the vicinity of the airport and the public in general." (Pub. Util. Code, § 21675, subd. (a).) In 2002, the County incorporated the ALUCP as part of its general plan.

The Powells' property is located within "Airport Compatibility Zone C" (Zone C), a zone that is not under a runway approach to the airport, but over which aircraft routinely fly at or below an altitude of 1,000 feet.[1] Under the ALUCP and general plan, all owners of residential real property located in Zone C must dedicate an overflight easement as a condition for the issuance of a building permit. The ALUCP states the purpose of the condition is to ensure that any improvement is compatible with the safe operation of the airport. The overflight easement grants the County the right to (1) allow flights and the noise inherent thereto in the airspace over the property; (2) regulate or prohibit the release into the air of substances such as smoke, dust, or steam that would impair visibility; (3) regulate or prohibit light emissions that might interfere with pilot vision; and (4) prohibit electrical emissions that would interfere with aircraft communication or navigational systems. The easement would run with the land as long as the airport is operational.

The Powells' property has a mobile home with an attached covered porch and carport that were illegally built without permits by previous owners. When the Powells applied for a building permit for the carport and porch in 2004, the County informed

---

[1] Public Utilities Code section 21402 provides: "The ownership of the space above the land and waters of this State is vested in the several owners of the surface beneath, subject to the right of flight described in Section 21403. No use shall be made of such airspace which would interfere with such right of flight . . . ." Public Utilities Code section 21403, subdivision (a) provides aircraft flight over land is lawful in California "unless at altitudes below those prescribed by federal authority, or . . . conducted so as to be imminently dangerous to persons or property on the land . . . beneath." Under the applicable federal regulations, flights operating above 1,000 feet over congested areas or 500 feet over sparsely populated areas are considered to be operating in public airspace over which the United States has exclusive sovereignty and citizens have a public right of transit. (14 C.F.R § 91.119(b), (c); 49 U.S.C. §§ 40102(32), 40103(a).) There is no evidence in the record to establish that airport traffic over the Powells' property entered their private airspace. The Powells conceded the mere fact that aircraft fly over their property "does not in and of itself constitute a physical taking" of the property.

them in writing that the overflight easement was a condition for issuance of a permit. The Powells did not complete the permit application due to other time demands, and it eventually expired.

In May 2008, the County wrote to the Powells notifying them they were required to obtain an "after-the-fact" permit for the carport and porch, and specifying the legal remedies and monetary penalties the County could pursue if the Powells did not restart the permit process. On January 15, 2010, the Powells submitted a new application for a permit, which included work to secure the porch foundation and strengthen the structures. On February 5, 2010, the County again informed the Powells in writing that the overflight easement was a condition for approval of the permit, and asked them to sign and return an enclosed copy of the written easement for recording. The County reiterated the same information and request in a second letter dated August 2, 2010. The Powells responded on August 20 with a letter from counsel protesting the overflight easement as being unconstitutional, and requesting the permit application be approved without that condition. The County advised the Powells' counsel it would not approve the permit application without dedication of the overflight easement. The Powells took no further administrative action, such as obtaining a denial of the application, seeking a variance, or taking an appeal from an adverse ruling on the permit or variance application to the County's board of supervisors (Board). According to the County, the Powells' application expired one year after it was submitted.

**B.** *The Petition and Complaint*

The Powells filed a petition for writ of mandate and complaint for declaratory and injunctive relief on January 12, 2011. The Powells' first cause of action sought a writ commanding the County to approve their permit application on the ground the overflight easement condition, as applied to their application, is unconstitutional.[2] The Powells'

---

[2] The Powells conceded their writ petition was defective in not specifying the board or person that should be compelled to approve the application and issue the permit, and sought leave in the trial court to amend the petition if the case proceeded. Because

3

second cause of action for declaratory relief sought a declaration the County could not require them to dedicate an overflight easement as a condition for approval of their permit application, and could not withhold approval until the unlawful condition is met. The declaratory relief cause of action asserted the condition violated the Fifth Amendment of the United States Constitution, article I, section 19 of the California Constitution, [3] and Government Code section 66001, [4] because the condition was "not related to the impact of the proposed project," for which the Powells were seeking a permit. The Powells asserted a third cause of action seeking a declaration that the County violated Government Code section 66001 by conditioning the granting of their permit application on dedication of the easement. The Powells advised the trial court that their section 66001 arguments were redundant to their inverse condemnation claims, should not have been designated as a separate cause of action, and would not be further pursued.

## C. *The Summary Judgment Motions*

The County and the Powells filed cross-motions for summary judgment. Both motions were premised in part on the undisputed facts summarized above concerning the origin, nature, and terms of the overflight easement condition, the Powells' efforts to obtain a permit, and County's response thereto. The County's separate statement and supporting evidence also established the following additional undisputed facts: (1) aircraft flight over the Powells' property did not in itself constitute a physical taking

---

the trial court granted the County's summary judgment motion on other grounds, it had no occasion to consider any amendment.

[3] Popularly referred to as the takings clause, and made applicable to the states by the Fourteenth Amendment, the Fifth Amendment bars the taking of private property for public use without just compensation. (*Lingle v. Chevron USA Inc.* (2005) 544 U.S. 528, 536 (*Lingle*).) California's takings clause provides in relevant part: "Private property may be taken or damaged for a public use . . . only when just compensation . . . has first been paid to . . . the owner." (Cal. Const., art. I, §19(a).)

[4] Government Code section 66001 is part of the Mitigation Fee Act (Gov. Code, § 66000 et seq.), which "codif[ies] existing constitutional and decisional law with respect to the imposition of development fees and monetary exactions on developments by local agencies." (Gov. Code, § 66005, subd. (c).)

4

of the Powells' property; (2) the Powells had no evidence the frequency of or noise from aircraft had increased since they purchased the property in 2004; (3) the Powells' complaint did not allege any injury or damage due to aircraft flying over the property; (4) the Powells had no knowledge of what uses of the property might violate the terms of the overflight easement in the future; (5) the permit work planned by the Powells would not create any condition violating the terms of the easement or in any way impacting airport operations; (6) the Powells' complaint did not seek damages for imposition of the overflight easement and the Powells did not know how the easement might affect the value of their property, if at all.

The Powells' separate statement and supporting evidence established the following additional undisputed facts, among others: (1) no studies were performed to determine if the Powells' permit project would have any impact on the airport; and (2) the proposed project itself posed no public safety hazard for the airport or the public, did not obstruct any navigable airspace, would not violate any of the terms of the overflight easement, and would otherwise be in full compliance with all applicable land use rules. The Powells asserted no undisputed facts showing they would be damaged or the value of their property reduced if they agreed to the easement condition. According to the Powells, the easement condition was an exaction required by a governmental agency in return for a permit or other government benefit. As such, it was an unconstitutional taking unless it substantially advanced the same legitimate governmental interest that would have justified denial of the permit or benefit sought by the owner, under the standards established in *Nollan, supra,* 483 U.S. 825 and *Dolan, supra,* 512 U.S. 374.

## D. *Trial Court Ruling*

The trial court granted the County's motion for summary judgment and denied the Powells' motion. The court held the Powells failed to demonstrate a genuine issue of fact existed with regard to whether the overflight easement itself was either (1) a compensable taking; or (2) was to be imposed on them on an individual, discretionary basis as opposed to being a uniform requirement for all building permits issued in Zone C. Absent one or

5

both of these conditions, the court held the easement requirement was not subject to scrutiny under the *Nollan*/*Dolan* line of cases and could not otherwise be deemed unconstitutional under California or federal takings law.

The Powells timely appealed from the ensuing judgment in favor of the County.

## II. DISCUSSION

### A. *Procedural Issues*

As a preliminary matter, we address the County's related contentions that the judgment should be affirmed because (1) the Powells failed to exhaust their administrative remedies, and (2) their constitutional challenge is not ripe for judicial review.[5] The County maintains the Powells should have sued the Board, not the County, after giving the Board an opportunity to act by either paying just compensation to the Powells, repealing the overflight easement requirement, granting the permit without it, or upholding the denial of the Powells' permit application. The County suggests the variance procedure described in specified provisions of the Humboldt County Zoning Regulations was an available administrative remedy for the Powells.[6] The trial court rejected the County's procedural defenses.

The Powells concede they should have named a person or board as the respondent to their mandamus petition under Code of Civil Procedure section 1085, and have expressed willingness to so amend the petition if necessary to a determination of the lawsuit, both in the trial court and here. They explain they could not have sought administrative mandamus under Code of Civil Procedure section 1094.5 because that

---

[5] We do not consider the County's assertions, offered without discussion or citation to authority, that the Powells' claims were barred by the 90-day limitations period in Government Code section 65009, subdivision (c)(1)(A), the doctrine of laches, and the impropriety of seeking declaratory relief to challenge the overflight easement condition. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

[6] As authority that this procedure applied, the County cites a portion of the Humboldt County Zoning Regulations, which states: "The Hearing Officer may impose conditions on a development permit or variance concerning any matter subject to regulation under . . . the County General Plan, to accomplish [specified] purposes, or any additional related purposes." (Humboldt County Zoning Regs., § 312-4, subd. 4.1.)

6

procedure only applies to a "final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given." (Code Civ. Proc., § 1094.5, subd. (a).) They contend no administrative hearing or appeals process was open to them because the County "never issued a final decision on the permit."

In our view, it would have been futile for the Powells to pursue the variance process the County cites as their administrative remedy. Variances may be granted under the Humboldt County Zoning Regulations "only when . . . the strict application of a zoning ordinance deprives [a] property of privileges enjoyed by other property in the vicinity." (Humboldt County Zoning Regs., § 312-3, subd. 3.2.) The Powells could not possibly have met that standard. As the County itself emphasizes, the overflight easement was required for the issuance of "any residential building permit in Compatibility Zone C." A hearing officer would therefore have had no discretion to grant a variance in this case. The exhaustion of remedies doctrine does not apply when no specific administrative remedy was available to the plaintiffs. (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1287.) Further, we see no indication the zoning regulations provided any mechanism for challenging the constitutional validity of the easement requirement. The exhaustion doctrine is therefore inapplicable to the Powells' suit since it raises constitutional issues that would not have been germane in pursuing a zoning variance. (*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 93–94.)

With respect to the related issue of ripeness, we believe the correspondence between the Powells' counsel and the County sufficiently established a final, definitive decision by the County that no permit would be issued without the easement.[7] No more was required to satisfy the ripeness requirement. (*County of Alameda v. Superior Court*

---

[7] After correspondence concerning their objection to the easement requirement, the Powells urged the County, if it still refused to grant the permit without the condition, to approve the permit *subject* to the easement condition. The County did not approve the permit and advised the Powells' counsel, "The permit application will not be approved until such time as the Powells grant an Overflight Easement to the County of Humboldt."

(2005) 133 Cal.App.4th 558, 567; *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 325.) Any doubt on this score was removed by the United States Supreme Court decision in *Koontz v. St. Johns River Water Mgmt. Dist.* (2013) ___ U.S. ___ [133 S.Ct. 2586, 2596] (*Koontz*) (the impermissible denial of a governmental benefit due to a person's refusal to cede a constitutional right is a cognizable injury).

**B.** *The Cross-motions for Summary Judgment*

The Powells contend the trial court erred as a matter of law by holding that in order to prevail on their summary judgment motion based on *Nollan/Dolan* they were required to come forward with undisputed facts showing the overflight easement (1) imposed a per se, physical taking of their property; and (2) was required of them on an individual, discretionary basis. The Powells maintain the holdings of *Nollan* and *Dolan* "constitute a stand-alone regulatory takings test that determines when permit conditions—if imposed—would violate the Fifth Amendment," without any independent requirement to prove a taking. For the reasons discussed below, we disagree and find the Powells' position runs directly contrary to the United States Supreme Court's extended analysis of takings law in *Lingle*, *supra*, 544 U.S. at pages 536–549.

**1. Nollan/Dolan *as Construed in* Lingle**

*Lingle* arose from a Hawaii statute limiting the rent oil companies could charge dealers leasing company-owned service stations. (*Lingle*, *supra*, 544 U.S. at p. 532.) Chevron claimed the statute's rent cap on its face effected a Fifth Amendment taking of Chevron's property, and sought summary judgment in the district court on the basis that the rent cap did not "substantially advance any legitimate government interest," a stand-alone takings test that had been applied to analyze governmental land use regulations under the takings clause in earlier Supreme Court precedents, including *Nollan* and *Dolan*. (*Lingle,* at pp. 533–534, 540, 546–547.) The Hawaii District Court and Ninth Circuit Court of Appeals accepted the "substantially advance" test as controlling, and on that basis upheld summary judgment in Chevron's favor. (*Id.* at pp. 535–536.) The Supreme Court reversed, holding the stand-alone "substantially advance" formula was no longer "doctrinally tenable" for purposes of evaluating regulatory takings claims arising

8

under the Fifth Amendment.  (*Lingle,* at p. 544, italics omitted.)  To reach that result, the court—acting unanimously—engaged in a searching reexamination and restatement of the doctrinal foundations of Fifth Amendment takings jurisprudence, including the basis for the *Nollan* and *Dolan* line of cases.

The *Lingle* court first reviewed the history of its takings jurisprudence.  The court explained the takings clause is " 'designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.' " (*Lingle*, *supra*, 544 U.S. at p. 537, quoting *First English Evangelical Lutheran Church v. County of Los Angeles* (1987) 482 U.S. 304, 315.)  Early case law required a direct government appropriation or physical invasion of private property before requiring compensation.  (*Lingle,* at p. 537.)  Later cases recognized that "government *regulation* of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." (*Id.* at p. 537, italics added.)

The *Lingle* court explained that regulatory takings law recognized two relatively narrow categories of regulatory action that are deemed to be per se takings under the Fifth Amendment:  "First, where government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation. See *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 73 L.Ed.2d 868, 102 S.Ct. 3164 (1982) [(*Loretto*)] (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking).  A second categorical rule applies to regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property. [*Lucas v. S.C. Coastal Council* (1992) 505 U.S. 1003, 1014 (*Lucas*)] (emphasis in original) [(holding the government must pay just compensation for such 'total regulatory takings,' except to the extent that preexisting nuisance and property law independently restricted the owner's intended use of the property)]." (*Lingle, supra,* 544 U.S. at p. 538.)  But barring either a permanent physical invasion under *Loretto* or compete deprivation of use under *Lucas*—and outside the

9

"special context" of land-use exactions as provided in *Nollan* and *Dolan*, discussed below—regulatory takings claims are evaluated under a multifactor test outlined in *Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104 (*Penn Central*), which focuses on whether the regulation interferes with investment-backed expectations for the property. (*Lingle,* at pp. 538–539.) The *Lingle* court noted that each of the three inquiries—physical invasion, complete deprivation of beneficial use, or the *Penn Central* multifactor test—shared a common focus on identifying regulatory actions that are "functionally equivalent" in whole or in part to a direct appropriation of the property or ouster of the owner. (*Lingle,* at p. 539.)

With this background, the *Lingle* court considered the "substantially advances" formulation for regulatory takings first set forth in *Agins v. City of Tiburon* (1980) 447 U.S. 255 (*Agins*), and later applied in *Nollan* and *Dolan*. (*Lingle, supra*, 544 U.S. at pp. 540–545.) The court found this test unquestionably derived from due process precedents not from pre-*Agins* Fifth Amendment cases. (*Lingle,* at p. 540.) The court observed that a test limited to whether a regulation substantially advances a legitimate governmental interest—in contrast to the regulatory takings jurisprudence reflected in *Loretto*, *Lucas*, and *Penn Central*— "reveals nothing about the *magnitude or character of the burden* a particular regulation imposes on private property rights." (*Lingle,* at p. 542.) Further, it "does not help to identify those regulations whose effects are functionally comparable to government appropriation or invasion of private property." (*Ibid.*) The court ridiculed Chevron's suggestion that a regulation could be a taking of private property "merely by virtue of its ineffectiveness or foolishness." (*Id.* at p. 543.) Finally, the court emphasized that the Fifth Amendment should not be construed in a manner that would enmesh the courts in "heightened means-ends review[s] of virtually any regulation of private property," a pursuit for which it deemed them ill-suited. (*Lingle,* at p. 544.)

While rejecting the "substantially advances" test for Fifth Amendment purposes, the Supreme Court went out of its way to emphasize and explain why its rejection of that doctrine did not disturb any of its prior holdings, especially including the holdings of

*Nollan* and *Dolan*. (*Lingle, supra*, 544 U.S. at pp. 545–548.) The court's discussion of *Nollan* and *Dolan* in *Lingle* is pivotal in this case.

*Lingle* described *Nollan* and *Dolan* as arising from "challenges to *adjudicative* land-use exactions—specifically, government demands that a landowner dedicate an easement *allowing public access to* [*his or*] *her property as a condition of obtaining a development permit*." (*Lingle, supra*, 544 U.S. at p. 546, italics added.) In *Dolan*, the owner was required to dedicate a portion of the relevant property for a " 'greenway,' " including a bike/pedestrian path, in return for a permit to expand her store and parking lot. (*Lingle,* at p. 546.) In *Nollan*, a permit to build a larger residence on beachfront property was conditioned on dedication of an easement allowing the public to traverse a strip of the property to reach the shoreline. (*Lingle,* at p. 546.) The *Lingle* court stated: "In each case, *the Court began with the premise that, had the government simply appropriated the easement in question, this would have been a per se physical taking*. [Citations.] The question was whether the government could, without paying the compensation that would otherwise be required upon effecting *such* a taking, demand the easement as a condition for granting a development permit the government was entitled to deny." (*Id.* at pp. 546–547, italics added.) Using the substantially advances formulation, *Nollan* held the government could avoid paying compensation "provided that the exaction would substantially advance the same government interest that would furnish a valid ground for denial of the permit." (*Lingle,* at p. 547.) As *Nollan* articulates it, compensation is required unless there is an "essential nexus" between the dedication condition and the asserted public purpose that would be advanced by denying the permit. (See *Nollan, supra*, 483 U.S. at p. 837.) *Lingle* explains that *Dolan* added a further qualification that the dedication must also be " ' "roughly proportional" ' " in nature and extent to the impact of the proposed development. (*Lingle,* at p. 547.)

The *Lingle* court explains that the underlying basis for the holdings in *Nollan* and *Dolan* was not the due process-derived "substantially advances" test adopted in *Agins*, but a separate doctrine known as the "doctrine of unconstitutional conditions": "[T]he rule [*Nollan* and *Dolan*] established is entirely distinct from the 'substantially advances'

11

test . . . . Whereas the 'substantially advances' inquiry . . . is unconcerned with the degree or type of burden a regulation places upon property, *Nollan* and *Dolan* both involved dedications of property *so onerous that, outside the exactions context, they would be deemed per se physical takings*. . . . As . . . explained in *Dolan*, these cases involve a special application of the 'doctrine of "unconstitutional conditions," which provides that 'the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit has little or no relationship to the property.' " (*Lingle, supra*, 544 U.S. at p. 547, italics added.)

Thus, as explicated in *Lingle*, *Nollan* applies only to dedication requirements "so onerous that, outside the exactions context, [they] would be deemed [a] *per se* physical taking[]." (*Lingle, supra*, 544 U.S. at p. 547.) *Lingle* emphasizes both *Nollan* and *Dolan* depend upon the premise "the easement in question . . . would have been a *per se* physical taking" if simply appropriated by the government. (*Lingle,* at p. 546; see also *Alto Eldorado Partnership v. County of Sante Fe* (10th Cir. 2011) 634 F.3d 1170, 1178 [10th Circuit treats *Nollan*/*Dolan* land-use exaction claims as a subcategory of physical per se takings]; *Conklin Development v. City of Spokane Valley* (9th Cir., Aug. 19, 2011, No. 10-35322) 2011 WL 3648100, *2 [*Nollan*/*Dolan* framework is limited to per se physical takings].) *Lingle* reasoned that both cases are rooted in the doctrine of unconstitutional conditions. In the exactions context, the specific constitutional right the owner is being asked to give up in exchange for a development permit is the right to just compensation for a taking. Thus, a necessary predicate for that doctrine to apply is that the public easement required as a condition of the permit has to be sufficiently onerous that it would constitute a compensable taking if simply appropriated by the government.

In *Koontz*, the United States Supreme Court extended the *Nollan*/*Dolan* analysis to cases in which the government demands the payment of money in return for the granting of a land-use permit instead of or as an alternative to the dedication of a property interest. (*Koontz, supra,* 133 S.Ct. at pp. 2598–2602.) It agreed with the petitioner that because the funds demanded burdened his ownership of a specific, identifiable property interest—

12

a parcel of real property—the demand could properly be analyzed as a Fifth Amendment taking of property equivalent to those in issue in *Nollan* and *Dolan*. (*Koontz,* at pp. 2599–2600.) *Koontz* thus holds that such a monetary exaction is *equivalent* to a per se physical taking. (*Id.* at p. 2600.) It does not in any way abrogate *Lingle*'s requirement of a dedication of property "so onerous that, outside the exactions context, [it] would be deemed [a] *per se* physical taking[]," except when a monetary exaction is involved that is an equivalent burden on the property. *Koontz* confirms that *Nollan* and *Dolan* are unconstitutional conditions cases that apply only when the government seeks to pressure property owners to accept an uncompensated Fifth Amendment taking of their property for public use. (*Koontz*, at p. 2594.) *Koontz* reiterates the point emphasized in *Lingle* that the unconstitutional conditions doctrine "protects the Fifth Amendment right to just compensation *for property the government takes* when owners apply for land-use permits." (*Koontz,* at p. 2594, citing *Lingle, supra*, 544 U.S. at p. 547, italics added.) If there is no taking, *Nollan* and *Dolan* do not apply.

## 2. *Threshold Requirement for Application of* Nollan/Dolan

Based on the unconstitutional conditions doctrine as explained in *Lingle* and *Koontz,* we reject the Powells' view that the *Nollan* essential nexus test is an independent, stand-alone test for determining whether a permit exaction is a compensable taking. That view puts the cart before the horse. Before *Nollan* scrutiny of a permit approval condition is required, a court must make a threshold determination whether the condition would rise to the level of a compensable taking for Fifth Amendment purposes if applied to the landowner outside the permitting process. Unless that test is satisfied, the government is not in fact demanding the landowner to trade a *constitutional* right—the right to just compensation for the taking of property—in order to receive a discretionary government benefit. (*Lingle, supra*, 544 U.S. at p. 547.)[8] To conduct this threshold inquiry, we apply well-established Supreme Court takings law.

---

[8] See also *Garneau v. City of Seattle* (9th Cir. 1998) 147 F.3d 802, 812 ("The first step in the unconstitutional exactions cases is to determine whether government imposition of the exaction would be a taking."); *Kamaole Pointe Development LP v.*

There is no claim or evidence in this case that the County's overflight easement condition completely deprived the Powells of any beneficial use of their property as in *Lucas* or interfered with their investment-backed expectations under the *Penn Central* multifactor test. The only category of compensable Fifth Amendment regulatory taking arguably implicated by the overflight easement is a per se physical taking under the standards of *Loretto*. For the reasons discussed below, we do not find the overflight easement by its literal terms would constitute such a taking, and the Powells failed to carry their burden of demonstrating there is a triable issue of material fact as to the easement's practical effect.

A per se physical taking requires a permanent physical occupation or invasion, not simply a restriction on the use of private property. (*Loretto*, *supra*, 458 U.S. at pp. 426–434.) On the other hand, the occupation need not extend to the entire property but may only cover a portion of it, as in the *Nollan* and *Dolan* cases themselves, or may constitute even a minor invasion of the property. (See *Loretto*, at p. 421 [holding that state law requiring a landlord to permit installation of cable facilities in rental property constituted a constitutionally compensable taking].) Transient occupation is not a per se taking under *Loretto*, however, as in a requirement to permit periodic onsite inspections. (See *Boise Cascade Corp. v. U.S.* (Fed. Cir. 2002) 296 F.3d 1339, 1352–1353.)

Thus, neither side in this case is entitled to summary judgment if there is any factual dispute about whether the overflight easement, if appropriated from the Powells by the County, would constitute a per se physical taking under *Loretto* and its progeny. The provisions of the easement regulating or prohibiting the Powells' release of substances into the air, as well as light and electrical emissions from their property are irrelevant in that regard. Such use restrictions do not constitute a taking. (*Loretto, supra*,

---

*County of Maui* (D.Hawaii 2008) 573 F.Supp.2d 1354, 1365 ("the first inquiry under the *Nollan/Dolan* standard is whether the government's exaction effects a taking"); *Iowa Assur. Corp. v. City of Indianola, Iowa* (8th Cir. 2011) 650 F.3d 1094, 1098–1099 (*Nollan* test does not apply to ordinance that did not restrict owners' right to exclude others from their property).

458 U.S. at p. 441.)  We focus our analysis instead on the provision of the easement granting the public, "to the extent and in the manner consistent with safe operating procedures as provided under applicable governmental regulations, the right to make flights, and the noise inherent thereto, in airspace over the property . . . in connection with landings, takeoffs, and general operation of the . . . Airport," and consider whether that provision results in a per se physical taking of the Powells' property.  Put another way, is there any basis to conclude from the language of the instrument or facts shown in the record that the Powells would be constitutionally entitled to compensation for this type of easement?

### 3. *Does the Overflight Easement Effect a Per Se Physical Taking?*

For its part, the County insists the easement does not constitute a taking for which the Powells would be entitled to compensation.  According to the County, the easement language it adopted does not authorize overflights using the Powells' private airspace, as discussed below, and does not involve any physical invasion or occupation of the Powells' property whatsoever.

In connection with their summary judgment motion, the Powells put in no evidence and asserted no undisputed facts concerning whether the overflight provision constituted a physical use or occupation of their property, including the private airspace above it.  On appeal, the Powells take seemingly inconsistent positions about the effect the easement would have.  They assert the easement would constitute a taking of their property by denying them the right to seek inverse condemnation for *future* overflights *if* expansion of the airport makes living on their property intolerable, but they also insist the easement would be a Fifth Amendment taking *regardless* of its effect on them and *regardless* of how the County plans to use it.  At another point, the Powells assert the easement allows the public to "continuously traverse [their] airspace," but they cite no evidence for this.  The Powells admitted in the trial court that (1) the mere fact aircraft fly over their property does not in itself constitute a physical taking, (2) they have suffered no injury or damage due to overflights, and (3) they do not know how the easement would affect the value of their property.  Since the Powells insist their lawsuit is an "as

15

applied" challenge, it was their burden to prove specific facts showing the overflight easement would effect a per se physical taking of *their particular* property. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) For the reasons discussed *post*, the language of the easement does not in itself establish a physical taking of the Powells' property or airspace right.

Under California law, an owner of real property owns not only the land but also the "free or occupied space for an indefinite distance upwards as well as downwards, subject to limitations upon the use of airspace imposed, and rights in the use of airspace granted, by law." (Civ. Code, § 659.) Under the Public Utilities Code, aircraft have a right to use airspace over private property "unless at altitudes below those prescribed by federal authority, or . . . conducted so as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . ." (Pub. Util. Code, § 21403, subd. (a).) Federal law allows aircraft to fly at an altitude of 1,000 feet over congested areas or over 500 feet in sparsely populated areas. (14 C.F.R. § 91.119(b), (c).) These are considered the "minimum safe altitudes of flight" except where necessary for takeoffs and landings. (*U.S. v. Causby* (1946) 328 U.S. 256, 263–264 (*Causby*).) Federal law defines "navigable airspace" as airspace above the minimum altitudes prescribed by the foregoing regulations, and grants the United States exclusive sovereignty of its airspace and grants its citizens a public right of transit through navigable airspace. (49 U.S.C. §§ 40102(a)(32), 40103(a).) Accordingly, the Powells' property rights do not include a right to exclude airplanes from using the navigable airspace above their property in accordance with applicable safety regulations. (See *Pacific Gas & Electric Co. v. Superior Court* (1983) 145 Cal.App.3d 253, 258, disapproved on other grounds in *Hubbard v. Brown* (1990) 50 Cal.3d 189, 197 [landowner has no right to exclude public from navigable waters].)

The Wisconsin Supreme Court's recent analysis of takings claims based on airplane overflight is instructive: "The government cannot 'take' private property from a person if the person does not have an interest in the property. Generally speaking, a landowner has a three dimensional property interest in airspace: The person has a

16

property interest in the block of air that is bounded by the length and width of the person's land holdings . . . and rises up to approximately the height of the government-defined minimum safe altitude of flight. Physical invasions of this superadjacent airspace *may* constitute a taking. Generally speaking, actions that occur outside or above this block of air do not constitute a taking, even if the actions have adverse consequences to the person's property." (*Brenner v. New Richmond Regional Airport Commn.* (Wis. 2012) 816 N.W.2d 291, 303 [343 Wis.2d 320, 344], italics added.)[9] Thus, as *Brenner* suggests, even flights below navigable airspace altitudes are not necessarily a taking. "Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." (*Causby*, *supra*, 328 U.S. at p. 266; *Goodman, supra*, 100 Fed.Cl. at p. 303 [a taking requires "direct, immediate, and substantial interference with the use and enjoyment of the burdened property"].)[10]

California's distinct takings clause has been construed somewhat more expansively than the Fifth Amendment in the context of aircraft overflights. California cases have held that just compensation may be required even if there is no physical intrusion into the landowner's private airspace: "The municipal owner and operator of an airport is liable for a taking or damaging of property when the owner of property in the vicinity of the airport can show *a measurable reduction in market value* resulting from the operation of the airport in such manner that the noise from aircraft using the airport

---

[9] Overflight cases have been analyzed in similar fashion in the federal courts: "[S]ubject to certain narrow exceptions not applicable here, flights by government-owned aircraft at elevations exceeding the minimum safe altitudes of flight established by the FAA [(Federal Aviation Administration)] are generally immunized from suits under the Takings Clause." (*Goodman v. U.S.* (Fed.Cl. 2011) 100 Fed.Cl. 289, 303 (*Goodman*), fn. omitted, citing *Aaron v. United States* (Ct.Cl. 1963) 311 F.2d 798, 801.)

[10] "Flight by aircraft in the air space above the land of another is a trespass if, but only if, [¶] (a) it enters into the immediate reaches of the air space next to the land, and [¶] (b) it interferes substantially with the other's use and enjoyment of his land." (Rest.2d Torts, § 159(2).) This formulation is "generally in accord" with California law. (*Drennen v. County of Ventura* (1974) 38 Cal.App.3d 84, 87–88.)

17

*causes a substantial interference with the use and enjoyment of the property*, and the *interference is sufficiently direct and sufficiently peculiar that the owner, if uncompensated, would pay more than his proper share to the public undertaking.*" (*Aaron v. City of Los Angeles* (1974) 40 Cal.App.3d 471, 483–484 (*Aaron*), italics added.) *Aaron* distinguished federal case law based on the fact that California's just compensation clause is triggered by the "damaging" as well as the "taking" of property. (*Id.* at p. 486.)

Thus, unless the overflight easement in this case by its own terms authorizes frequent incursions into the Powells' private airspace at altitudes causing noise and disturbance to the Powells, it does not effectuate a taking under federal or state law. According to the County, the limitation of the easement to overflights made "to the extent and in the manner consistent with safe operating procedures as provided under applicable governmental regulations" means that it does not permit overflights traversing the Powells' private airspace. Moreover, the County rejects the Powells' claim that the easement would deny them the right to seek inverse condemnation damages for *future* overflights should expansion of the airport create conditions substantially interfering with the use and enjoyment of their property. The County insists the easement could not be used in the future in a manner that materially increases its burden without payment of just compensation. (See *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 350.)[11] We regard this as a binding concession by the County that the easement does not preclude a takings claim by the Powells or their successors in interest if there is an increase in noise or overflights in the future that causes a measurable reduction in the value of the property under the standards set forth in *Aaron*.

---

[11] It has long been recognized in the aviation context that the presence of an existing aviation easement does not preclude a future takings claim based on expanded or more onerous overflights. (See *Avery v. U.S.* (Ct.Cl. 1964) 330 F.2d 640, 642–644, and cases cited therein; *City of Austin v. Travis County Landfill Co.* (Tex. 2002) 73 S.W.2d 234, 243.)

"[C]ourts should, if reasonably possible, construe a statute 'in a manner that avoids any doubt about its [constitutional] validity.' " (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 346, italics omitted.) Here, the easement was required pursuant to a land use plan duly enacted by the County. Although the Powells make no direct argument the County is misconstruing the easement's language, they seem to presume the easement permits nontransient physical occupation of their private airspace. If there is any ambiguity about the easement condition's scope in that regard, such ambiguity must be resolved in a manner that renders it constitutional. (*Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364, 381–382 [if a statute or ordinance is susceptible of two reasonable constructions, only one of which raises constitutional questions, the court will adopt the construction that renders the ordinance free from doubt as to its constitutionality].) Here, the County's construction of the easement is consistent with its text, consistent with the statutory and decisional law regarding overflights, and would avoid any doubt about its constitutionality. We find the County's interpretation is more reasonable than the Powells' apparent view that the easement authorizes continuous use of their airspace and/or forever precludes them or any future owner from seeking condemnation damages if overflights become noisier and more frequent due to future expansion of the airport.

Construing the easement to be inconsistent with any taking of the Powells' property does not render it a nullity. So construed, the easement would serve important public uses: (1) giving the County the right to enforce the flight safety land-use regulations that it includes against the Powells and all successor owners of the property, (2) affording the County a defense to nuisance or similar noncondemnation damages claims due to overflight noise, and (3) ensuring notification to all future buyers of the use restrictions and potential noise issues associated with the property.[12]

---

[12] Under California law, airport land use planning commissions are to be guided by the Airport Land Use Planning Handbook published by the State Department of Transportation. (Pub. Util. Code, § 21674.7, subd. (a).) The 2011 handbook states

19

It is the defendant's initial burden on a motion for summary judgment to show by supporting evidence that one or more elements of the plaintiff's cause of action cannot be established as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, 855.) The burden then shifts to the plaintiff to show by specific, admissible evidence that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar,* at pp. 849, 850–851.) If the plaintiff fails to meet this burden, the motion should be granted. (*Aguilar,* at pp. 855, 857.) We consider all inferences reasonably deduced from the evidence unless such inferences are contradicted by other inferences or evidence. (Code Civ. Proc., § 437c, subd. (c); *Aguilar*, at p. 856.)

The County asserted as undisputed facts that the Powells did not claim any loss in the property's value due to the overflight easement or attribute any monetary damages to the condition that they grant the easement in order to receive the issuance of a building permit. This was based in part on Mr. Powell's deposition testimony as follows: "[Q.] What loss or damage or harm do you see your property suffering from dedicating an overflight easement? [¶] . . . [¶] [A.] I feel I have valid concerns with future airport use, which is unknown to me what the picture will look like in the future. If there's major noise concerns, to me the entire property is useless. If you come home and you're stressed from work, you come home and you are stressed at home, you're not going to live very long." Further, in response to the County's summary judgment motion, the Powells stated they "do not know how the Overflight Easement would affect the value of the Property." In our view, the County met its initial burden to show the Powells could not demonstrate the easement constituted a taking of their property without compensation, since there was no evidence it would permit overflights that would invade the Powells' private airspace, substantially interfere with their use and enjoyment of their property, or cause a measurable reduction in the property's value. In response, the Powells came forward with nothing more than speculation that the easement might

overflight easements are "used primarily as a form of buyer notification." (Cal. Dept. of Transp., Airport Land Use Planning Handbook (Oct. 2011), p. L-10.)

20

preclude them from obtaining just compensation if overflight noise substantially increased in the future. They offered no appraisal testimony about the easement's effect on their property's value, no evidence of any airport expansion plans affecting them, and no textual or legal argument that the easement would preclude them from seeking just compensation if airport operations increased in the future.[13] In fact, the Powells take the position *Nollan* precludes requiring the easement as a building permit condition regardless of how the County uses it in the future, and regardless of its economic effect on the property.

Legislative enactments, including local ordinances, are clothed with a presumption of constitutionality. (*In re Dennis M.* (1969) 70 Cal.2d 444, 453; *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d. 348, 389; *Porter v. City of Riverside* (1968) 261 Cal.App.2d 832, 836.) A party challenging the constitutionality of such a measure has the burden of producing evidence to overcome that presumption. (*Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 78–79; *City of Walnut Creek v. Silveira* (1957) 47 Cal.2d 804, 811.) In substance, the Powells chose as a matter of litigation strategy to stand on the legal proposition that they carried no burden of proof—even in this "as applied" challenge—of proving the easement condition was "so onerous that, outside the exactions context, [it] would be deemed [a] *per se* physical taking[]." (*Lingle*, *supra*, 544 U.S. at p. 547.) Because we reject that proposition, we find the trial court properly denied the Powells' motion for summary judgment, and properly granted the County's.[14]

---

[13] In their opening brief on appeal, the Powells assert the "practical effect" of the easement is to prevent them "from bringing an inverse condemnation action based on airplane overflights in the future, should expansion of the . . . airport make living on their property intolerable." The Powells offer no evidence or textual argument to support this proposition.

[14] We do not reach the trial court's additional ground for ruling in favor of the County—that the *Nollan/Dolan* analysis applies only to discretionary, adjudicatory impositions of exaction conditions, not to exactions applied to all similarly situated property owners on an identical, nondiscretionary basis by legislative enactment.

21

In sum, the *Nollan* essential nexus standard is a special application of the doctrine of unconstitutional conditions. It does not apply unless the government requires a person as a condition for receiving a discretionary government benefit to give up the constitutional right to just compensation for a taking of their property, or compels the person to pay a monetary fee equivalent to such a taking. The overflight easement in this case did not as a matter of law effect a taking of the Powells' private property or airspace under Fifth Amendment jurisprudence or California law, and the Powells failed to come forward with evidence sufficient to either establish the practical effect of the easement was to bring about such a taking, or to demonstrate there are triable issues of material fact with respect to that question. The trial court therefore properly granted summary judgment to the County.

## III. DISPOSITION

The judgment is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.

_____
Banke, J.

22

Trial Court:   Humboldt County Superior Court

Trial Judge:   Hon. Dale A. Reinholtsen

Counsel:

Pacific Legal Foundation, R.S. Radford, Meriem L. Hubbard and Jennifer Fry Thompson for Plaintiffs and Appellants.

Center for Constitutional Jurisprudence, John C. Eastman, Anthony T. Caso and Karen J. Lugo as Amicus Curiae on behalf of Plaintiffs and Appellants.

Wendy B. Chaitin, County Counsel, Joyce E. Stigter, Deputy County Counsel; Rosales Law Partners, Mara E. Rosales and Robert D. Sanford for Defendant and Respondent.